**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Local Union 1116 International Brotherhood of Electrical Workers,<br><br>Plaintiff,<br><br>v.<br><br>UNS Gas Incorporated,<br><br>Defendant. | No. CV-25-00658-TUC-JCH<br><br>**ORDER** |

Before the Court is Defendant UNS Gas, LLC's ("UNS Gas") Motion to Stay (Doc. 17). Defendant seeks to stay this action pending disposition of a related unfair labor practice charge currently pending before the National Labor Relations Board ("NLRB"). The Court will grant the Motion.

**I.    Background**

**A.  Allegations in the Complaint**

Plaintiff Local Union 1116 International Brotherhood of Electrical Workers ("Local 1116") is a labor organization that represents UNS Gas employees. Doc. 1 ¶¶ 8–14. Local 1116 and UNS Gas are parties to a collective bargaining agreement (the "Agreement") that, relevant here, incorporates a pension benefit plan for UNS Gas employees. *Id.* ¶ 17. Article 24 of the Agreement provides that

> [t]his Agreement shall remain in full force and effect up to an[d] including June 23, 2024 and thereafter from year to year, unless either the Company or the Union serves written notice on the other, at least sixty (60) days prior to said date, that it desires to modify or terminate this Agreement. Negotiations for any successor Agreement shall begin thirty (30) calendar days before the termination date unless the parties mutually agree upon a different starting

time. In any year in which a notice to modify is given as provided for above, this Agreement shall remain in full force and effect beyond the anniversary date and until a successor Agreement is reached or until notice to terminate this Agreement is served by one party to the other. This Agreement shall terminate seven (7) days after receipt by a party of a notice to terminate given subsequent to the anniversary date.

*Id.* ¶ 16.

Starting in about March 2024, the parties engaged in collective bargaining under the Agreement over terms of a successor agreement. *Id.* ¶ 22. When Plaintiff filed the Complaint, the parties had yet to reach an agreement. *Id.* ¶¶ 23–25. A notable bargaining point was whether the pension plan would apply to newly-hired employees. *Id.* ¶¶ 28–29.

On February 17, 2025, UNS Gas unilaterally declared that negotiations were deadlocked and made its "last, best, and final offer" to Local 1116. *Id.* ¶¶ 31–32. The final offer provided that the pension plan would not apply to newly-hired employees and would instead be replaced with a new 401(K) plan. *Id.* ¶ 33. Local 1116 tentatively agreed to the final offer, subject to member ratification. *Id.* ¶ 36. But the ratification vote failed, and Local 1116 notified UNS Gas that there was no agreement. *Id.* ¶¶ 37–39.

Local 1116 asserts that when UNS Gas issued the February 17, 2025 final offer, the parties were not at an impasse regarding the pension plan or the Agreement as a whole. *Id.* ¶¶ 34–35. Though Local 1116 intended to resume bargaining, UNS Gas declared bargaining was at an impasse and announced its intention to implement the terms of its last, best, and final offer. *Id.* ¶¶ 40–42. Effective June 1, 2025, UNS Gas closed the pension plan to new hires. *Id.* ¶ 43.

**B. Procedural History**

Before filing in this Court, on April 21, 2025, Local 1116 filed an unfair labor practice charge with the NLRB (Charge No. 28-CA-364782) alleging UNS Gas had unlawfully implemented its last, best, and final offer and refused to bargain collectively in violation of 29 U.S.C. § 158(a)(5). Doc. 17 at 5; *see also* Doc. 17-1. To date, no investigator has been assigned to Local 1116's NLRB charge, the first phase of adjudicating an unfair labor practice charge. *See* Doc. 21 at 8.

Local 1116 filed its Complaint here on November 26, 2025. Doc. 1. Plaintiff seeks declaratory judgment under 28 U.S.C. § 2201 that Defendant violated Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a) by breaching the Agreement. *Id.* ¶¶ 65–77.

## II.    Legal Standard

"Although the [NLRB] is vested with primary jurisdiction to determine what is or is not an unfair labor practice the Board shares with the district court concurrent jurisdiction over cases legitimately involving both unfair labor practice charges and breach of collective bargaining agreement claims." *Cent. Valley Typographical Union, No. 46 v. McClatchy Newspapers*, 762 F.2d 741, 746 (9th Cir. 1985) (quotations omitted). However, where a party files suit in a district court over a collective bargaining agreement claim that is closely related to an unfair labor practice charge already before the NLRB, "[a]ppropriate deference to the jurisdiction and expertise of the agency often will require a stay of judicial proceedings." *N. Cal. Dist. Council of Hod Carriers, etc. v. Opinski*, 673 F.2d 1074, 1075 (9th Cir. 1982); *see also Int'l Longshore & Warehouse Union v. ICTSI Or., Inc.*, 932 F. Supp. 2d 1181, 1200 (D. Or. 2013) (where a question of contract interpretation "is closely related to an unfair labor practice charge the employer has already presented to the NLRB, the district court must exercise its discretion to determine whether proceedings should be stayed until final disposition of the NLRB proceeding." (quoting *Opinski*, 673 F.2d at 1075).

In determining whether to stay a case pending resolution of related proceedings before the NLRB, the Court considers several factors. *See McClatchy Newspapers*, 762 F.2d at 747–48. First, the Court considers whether the contractual issue before it is "inextricably bound up" with the unfair labor practice issue. *Id.* at 747. Next, the Court examines "whether the ALJ's decision, if adopted, presents a likelihood of preclusion." *Id.* at 748. Finally, the Court must balance the equities. *Id*; *See also Int'l Longshore*, 932 F. Supp. 2d at 1200 (citing *McClatchy Newspapers*, 762 F.2d at 748).

### III.    Analysis

Here, the *McClatchy* factors favor a stay. First, whether Defendant violated 29 U.S.C. § 185(a) by breaching the Agreement is inextricably bound up with whether Defendant committed an unfair labor practice under 29 U.S.C. § 158(a). At bottom, the question before both this Court and the NLRB is whether Defendant acted wrongfully by implementing its last, best, and final offer. This Court would decide whether Defendant breached its obligations under the Agreement, and the NLRB would decide whether Defendant refused to bargain collectively in good faith. But the question of what standard governed the parties' negotiations—Article 24 of the Agreement or Section 8(d) of the LMRA—are inherent to both issues. *See NLRB v. Strong*, 393 U.S. 357, 361 (1969) ("[The NLRB] may also, if necessary to adjudicate an unfair labor practice, interpret and give effect to the terms of a collective bargaining contract."). To proceed here risks inconsistent outcomes between this Court and the NLRB depending on the Court's conclusion as to which standard governed the parties' conduct.

Because the issues before this Court and the NLRB are so closely related, a decision in either forum presents a likelihood of issue preclusion. Issue preclusion "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 858 n.8 (9th Cir. 2016) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)). Issue preclusion applies if three elements are met: "(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom [issue preclusion] is asserted was a party or in privity with a party at the first proceeding." *Id.* (quoting *Paulo v. Holder*, 669 F.3d 911, 917 (9th Cir. 2011)). Here, the parties are identical, and though the questions in each forum are framed under separate sections of the LMRA, both proceedings ultimately seek to determine whether Defendant properly implemented its last, best, and final offer. As such, both proceedings are likely to result in final judgments on the merits

- 4 -

as to that issue. *See Int'l Longshore*, 932 F. Supp. 2d at 1201 (staying case where the question before the NLRB would depend in part on the question before the district court).

Finally, the equities favor a stay. In contrast to many cases where one party files before the NLRB and the other files in district court, here, Plaintiff filed both complaints. Plaintiff chose to file before the NLRB, and the Court is hesitant to now find the equities favor Plaintiff given the backlog before the NLRB.[1] *See Int'l Longshore*, 932 F. Supp. 2d at 1201 ("The equities, on balance, weigh in favor of a stay. ICTSI and the Port initially faced a choice of whether to file charges with the NLRB or to file suit in a district court. They chose to invoke the NLRB's jurisdiction by filing charges."). Further, the Court finds Plaintiff faces limited prejudice from a stay. In its prayer for relief, Plaintiff asks the Court to enjoin Defendant from continuing to close the pension plan to new hires without first affording Plaintiff the opportunity to bargain. Doc. 1 at 13. At oral argument, Plaintiff argued they are being prejudiced in the status quo because without the pension plan in place, there is no "hook" for employees to join or stay with the union. But Plaintiff also acknowledged that, should it prevail and the pension be reinstated, those new employees that are hired and remain would be able to receive their pensions retroactively. Given the factors analyzed above, the resources that both parties would expend litigating two cases concerning the same conduct, and the preference for deferring to the NLRB's jurisdiction, the Court finds any speculative harm to union membership is not enough to sway the equities in Plaintiff's favor.

///

///

///

///

///

///

---

[1] In response to Defendant's Motion to Stay, Plaintiff cites a February 2025 memorandum from Acting NLRB General Counsel William B. Cowen discussing the backlog. *See* Doc. 21 at 2. But Plaintiff filed its complaint before the NLRB in April 2025 and necessarily had to be aware of the backlog before doing so.

IV.     **Order**

Accordingly,

**IT IS ORDERED granting** Defendant's Motion to Stay (Doc. 17). This matter is stayed until Charge No. 28-CA-364782 currently pending before the NLRB is resolved.

Dated this 7th day of July, 2026.

John C. Hinderaker
United States District Judge

- 6 -